**Emily KOLODZIEJSKI, Plaintiff,**

v.

**CITY OF PHOENIX, Arizona, and Milton H. Graham, Frank G. Benites, Charles Case, John J. Long, Milton Sanders, Mrs. Dorothy Theilkas, Dr. Morrison F. Warren, Members of and constituting the City Council of the City of Phoenix, Arizona, Defendants.**

**No. Civ–69–335 Phx.**

United States District Court,
D. Arizona.

Nov. 25, 1969.

Gust, Rosenfeld & Divelbess, Phoenix, Ariz., for plaintiff.

Robert Backstein, City Atty., Gary K. Nelson, Atty. Gen., Robert E. Lee, Special Counsel, Phoenix, Ariz., for defendants.

Before ELY, Circuit Judge, and CRAIG and COPPLE, District Judges.

## OPINION AND ORDER

### PER CURIAM:

The above entitled cause was instituted pursuant to Title 42 U.S.C. Section 1983, Title 28 U.S.C. Section 1343(3), (4), and Title 28 U.S.C. Sections 2201 and 2202.

Plaintiff, a resident of the City of Phoenix, within the District of Arizona, seeks to enjoin the City of Phoenix, a body politic, the Mayor and members of the City Council, from issuing certain bonds approved at a special election June 10, 1969, called for that purpose. The election was duly and regularly called by the City, pursuant to Article 7, Section 13 of the Arizona Constitution, and Title 9, Section 782, A.R.S.[1]

The propositions offered to the electorate were ten in number, the first two related to Revenue Bonds: (1) for the Municipal Water System, $53,900,000, (2) for the Airport and related facilities, $58,900,000. The remaining eight propositions related to General Obligation Bonds: (3) Sewer System, $37,000,000, (4) Parks and Playgrounds, $9,000,000, (5) Municipal Buildings, $1,000,000, (6) Fire Department, $1,200,000, (7) Police and Public Safety Buildings, $4,500,000, (8) Maintenance and Service Facilities, $1,500,000, (9) Sanitary Landfills, $2,250,000, (10) Library, $4,000,000.

Pursuant to the Arizona Constitution and Statutes, the electorate was limited to duly qualified electors who, in addition, were real property taxpayers. Plaintiff is a duly qualified elector of the City of Phoenix, but not a real property taxpayer.

---

1. Article 7, Section 13, Constitution of Arizona: "Questions upon bond issues or special assessments shall be submitted to the vote of real property tax payers, who shall also in all respects be qualified electors of this State, and of the political subdivisions thereof affected by such questions."

Title 9, Section 782, A.R.S.: "When the governing body of an incorporated city or town determines to borrow money under the provisions of this article, the question of issuing bonds under this article shall be submitted to the real property taxpayers who are in all other respects qualified electors of the municipality. No bond shall be issued without the assent of a majority of such qualified electors voting at an election held for that purpose as provided in this article."

The canvass of the election took place June 23, 1969, and the several propositions were declared to be carried. Under Arizona law the period during which an elector may contest an election is limited to five (5) days following the canvass of the election and the declaration of the results thereof. 16 A.R.S. 1202, 1204.

This action was instituted August 1, 1969, in this Court, no State action having been instituted. A Three Judge Court was convened to hear the matter, pursuant to Title 28 U.S.C. Sections 2281 and 2284. The matter was submitted and argued to the Court upon an agreed Statement of Facts consistent with the foregoing statement.

We need go no further than Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647, both decided June 16, 1969.

In *Kramer, supra,* the Supreme Court has held that State Statutory and Constitutional provisions prohibiting the exercise of the voting franchise to some electors, while allowing it to others, must be subjected to close scrutiny to "determine whether the exclusions are necessary to promote a compelling state interest." If there is no compelling State interest to be promoted by the exclusion, the Constitutional and Statutory provisions are violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

As in *Cipriano, supra,* we find the challenged Constitutional provision and the challenged Statutes under which the election was held to contain "a classification which excludes otherwise qualified voters who are as substantially affected and directly interested in the matter voted upon as are those who are permitted to vote." There was no evidence before this Court which would justify the conclusion that the exclusions under Arizona law are necessary to promote a compelling State interest. Moreover, in the instant case we find no evidence which would justify a distinction between Revenue Bonds and General Obligation Bonds.[2]

In *Cipriano, supra,* in order to avoid significant hardships on cities' bondholders and others, the Court held the rule of that case would be applied prospectively, "only where, under state law, the time for challenging the election result has not expired, or in cases brought within the time specified by state law for challenging the election and which are not yet final. Thus, the decision will not apply where the authorization to issue the securities is legally complete on the date of this decision."

In the instant case the authorization to issue the securities was not legally complete by June 16, 1969 (the date of the *Cipriano* decision) nor had the time expired within which the election could have been contested. In the instant case we find the Arizona Constitutional and Statutory exclusions involved in the election called by the City of Phoenix and held June 10, 1969, to be violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

It is ordered that the defendants will be permanently enjoined from the issuance of any securities purportedly authorized by the challenged election, and the plaintiff's counsel will submit a proposed form of judgment.

---

2. The defendants concede that *Kramer* and *Cipriano* require that the election be invalidated insofar as it authorized the issuance of Revenue Bonds.